UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARSHAUN WEST,

    Petitioner,

v.                                     Case No. 3:12-cv-454-J-32JBT

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

    Respondents.
_____

## **ORDER**

### **I. Status**

Petitioner, an inmate of the Florida penal system, initiated this case by filing a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) (Petition). He challenges his 2008 state court (Duval County) judgment of conviction for conspiracy to traffic in heroin and trafficking in heroin. Petitioner was sentenced to a total term of imprisonment of 30 years. Respondents filed an Answer (Doc. 13) (Answer),[1] and Petitioner filed a Reply (Doc. 16) (Reply). Petitioner then obtained counsel, who sought a stay of the case to review the docket and pleadings (Doc. 24). Counsel subsequently filed a Memorandum of Law in Support of the Petition (Doc. 27) (Memorandum). Respondents

---

[1] The Court cites to the exhibits attached to the Answer as "Ex." Respondents did not include the complete trial transcript. The Court takes judicial notice of the missing portion from the state court docket.

notified the Court that they would rely on the arguments previously made in the Answer (Doc. 30). The case is ripe for review.[2]

## II. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

> Under AEDPA, when a state court has adjudicated the petitioner's claim on the merits, a federal court may not grant habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). A state court's factual findings are presumed correct unless rebutted by clear and convincing evidence.[] Id. § 2254(e)(1); Ferrell v. Hall, 640 F.3d 1199, 1223 (11th Cir. 2011).

---

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court, and "further factual development" is not necessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

2

> AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

"[A] federal court reviewing the judgment of a state court must first identify the last adjudication on the merits. It does not matter whether that adjudication provided a reasoned opinion because section 2254(d) 'refers only to a decision' and does not 'requir[e] a statement of reasons.'" Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016), cert. granted, 137 S. Ct. 1203 (2017), (quoting Richter, 562 U.S. at 98). Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99 (citation omitted). When the last adjudication on the merits "'is unaccompanied by an explanation,' a petitioner's burden under section 2254(d) is to 'show[] there was no reasonable basis for the

3

state court to deny relief.'" Wilson, 834 F.3d at 1235 (quoting Richter, 562 U.S. at 98). "'[A] habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court.'" Id. (quoting Richter, 562 U.S. at 102).

> When the reasoning of the state trial court was reasonable, there is necessarily at least one reasonable basis on which the state supreme court could have denied relief and our inquiry ends. In this way, federal courts can use previous opinions as evidence that the relevant state court decision under review is reasonable. But the relevant state court decision for federal habeas review remains the last adjudication on the merits, and federal courts are not limited to assessing the reasoning of the lower court.

Id. at 1239.[3]

### B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before filing a habeas petition in federal court, a petitioner must exhaust all available state court remedies. To exhaust state remedies, the petitioner must "fairly present[]" each issue raised in his federal petition to the state's highest court. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). This means that a "state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Raleigh v. Sec'y, Fla. Dep't of Corr., 827 F.3d 938, 956 (11th Cir. 2016), cert. denied, Raleigh v. Jones, 137 S. Ct. 2160 (2017) ("The petitioner must

---

[3] Wilson is currently before the Supreme Court. However, even under pre-Wilson AEDPA jurisprudence, the result here would be the same.

have presented the claim in a manner that affords the State a full and fair opportunity to address and resolve the claim on the merits." (quotations and citation omitted)). It is not "sufficient merely that the federal habeas petitioner has been through the state courts, nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015). Rather, "[t]he crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim." Id.

Failure to exhaust results in a procedural default which raises a potential bar to federal habeas review. "A state prisoner may overcome the prohibition on reviewing procedurally defaulted claims if he can show 'cause' to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation.'" Davila v. Davis, 137 S. Ct. 2058, 2064-65 (2017) (citing Wainwright v. Sykes, 433 U.S. 72, 84 (1977); Coleman v. Thompson, 501 U.S. 722, 750 (1991)). To show cause for a procedural default, "the petitioner must demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court." Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). "[T]o show prejudice, a petitioner must demonstrate that 'the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness.'" Id. (quoting McCoy v. Newsome, 953 F.2d 1252, 1261 (11th Cir. 1992) (per curiam)).

A petitioner may also obtain review of a federal habeas claim that is procedurally defaulted if he can show that a "constitutional violation has probably resulted in the

5

conviction of one who is actually innocent[.]" Murray, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995). "To be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

### III.  Analysis

####   A.     Ground One

Petitioner asserts that newly discovered evidence proves his actual innocence. After Petitioner's trial, his codefendant (Anthony Sweeting) signed an affidavit[4] stating that Petitioner (1) "did not have anything to do with the narcotics that w[ere] found in the rental car;" (2) "had no knowledge of the narcotics and no dealings of anything illegal;" and (3) "was only a passenger along for the ride." Ex. Z at 18. In his counseled Memorandum, Petitioner argues that his freestanding actual innocence claim is a colorable claim that can be raised on federal habeas review.

While a federal habeas petitioner may allege actual innocence to overcome a procedural bar or the application of the one-year limitations period, the Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." McQuiggin v. Perkins, 133 S. Ct. 1924, 1931 (2013) (citing Herrera v. Collins, 506 U.S. 390, 404-05 (1993)). However, the Eleventh Circuit, which this

---

[4] The affidavit was signed one day after Mr. Sweeting was sentenced.

6

Court must follow, "forbids granting habeas relief based upon a claim of actual innocence, anyway, at least in non-capital cases." Jordan v. Sec'y, Dep't of Corr., 485 F.3d 1351, 1356 (11th Cir. 2007) (citations omitted); see also Cunningham v. Dist. Attorney's Office for Escambia Cty., 592 F.3d 1237, 1272 (11th Cir. 2010) (recognizing that "this Court's own precedent does not allow habeas relief on a freestanding innocence claim in non-capital cases"). Therefore, Petitioner's claim is not cognizable on federal habeas review.

Assuming Petitioner could raise a freestanding actual innocence claim, he would be required to show that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup, 513 U.S. at 329. Petitioner cannot meet this high standard.

The following is a summary of the evidence adduced at trial (taken from the state's response to Petitioner's state court post-conviction motion).

> The Defendant's activities were revealed as part of a wiretap investigation. A wiretap was placed in his codefendant's cellular telephone. The electronic surveillance and other testimony given at trial revealed the following: the Defendant was part of a group of individuals involved in the trafficking of heroin from Miami to Jacksonville, FL. The Defendant's purpose in the organization was to serve as a body guard for his codefendant, Anthony Sweeting. The Defendant accompanied his codefendant on numerous trips from Miami to a Jacksonville residence, referred to as the "Trap," to deliver heroin. The Defendant and Sweeting participated in the bagging of heroin for distribution at the Defendant's residence. The Defendant received proceeds from the sale of heroin. The Defendant received a phone call from his codefendant acknowledging that "they keep calling," which is code for needing an additional supply of heroin. The Defendant was stopped in Jacksonville on his way to the Trap with heroin in the car, but released in an effort to obtain more information about the organization. The day after the stop, the Defendant engaged in a conversation with other codefendants

> regarding law enforcement's acquisition of the dope and questioned whether the officers were "dirty." The heroin that was taken when the Defendant was stopped in Jacksonville was supposed to be supplied to the Trap. The Defendant came to Jacksonville to sell heroin.

Ex. Z at 127-28 (citations omitted). Considering the evidence adduced at trial along with the "new affidavit," the Court finds that Petitioner has not shown "that it is more likely than not that no reasonable juror would have convicted him" if the information in the affidavit had been presented at his trial. Even if Petitioner could raise a freestanding actual innocence claim, he would not be entitled to federal habeas relief.

### B. Ground Two

Petitioner argues that the evidence was insufficient to prove constructive possession, because the state failed to prove that he had "knowledge" of the controlled substance that was found in the vehicle. See Memorandum at 29 (requesting that this Court find "as to the possession of narcotics count" that "there was no evidence introduced that [he] had knowledge of those specific narcotics"). He indicates that he raised this claim in his Rule 3.850 motion. See Petition at 7.

A sufficiency of the evidence claim is properly raised on direct appeal rather than in a post-conviction motion. Petitioner did not raise this issue on direct appeal. He attempted to raise it in his post-conviction motion, but the state court did not address it because it was not clearly presented. Thus, because Petitioner failed to properly present this claim to the state courts in a procedurally correct manner, it is procedurally defaulted on federal habeas review. Petitioner has shown neither cause excusing the default nor resulting prejudice. He

8

also has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. Thus, Petitioner is not entitled to relief on this claim.

Nevertheless, the Due Process Clause of the Fourteenth Amendment requires the state to prove beyond a reasonable doubt each element of the offense charged. See Jackson v. Virginia, 443 U.S. 307, 316 (1979). "The relevant question in reviewing the sufficiency of the evidence supporting a criminal conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Hallford v. Culliver, 459 F.3d 1193, 1205-06 (11th Cir. 2006) (per curiam) (quoting Jackson, 443 U.S. at 319). In reviewing the evidence presented at trial, "this court must presume that conflicting inferences to be drawn from the evidence were resolved by the jury in favor of the State." Thompson v. Nagle, 118 F.3d 1442, 1448 (11th Cir. 1997) (citing Machin v. Wainwright, 758 F.2d 1431, 1435 (11th Cir. 1985)). After a thorough review of the trial transcript, it is clear that the state presented sufficient evidence on each element of the charged offense for a "rational trier of fact" to find "the essential elements of the crime beyond a reasonable doubt." Hallford, 459 F.3d at 1206 (quotations and citation omitted). The jury was entitled to believe the state's witnesses and consider the testimony along with the other evidence presented, including the wiretap transcripts. Petitioner's sufficiency of the evidence claim is without merit.[5]

---

[5] At Petitioner's sentencing hearing, the trial judge denied a motion for a judgment of acquittal based on insufficiency of the evidence: "Yes, I'm denying it on the merits. There was sufficient evidence to go – or I would have entered a judgment of acquittal on my own motion without Mr. West even having to do it." Ex. H at 439.

### C. Ground Three

Petitioner claims that the statutes under which he was convicted are unconstitutional. To support this ground, he cites Shelton v. Sec'y, Dep't of Corr., 802 F. Supp. 2d 1289 (M.D. Fla. 2011). As Petitioner recognizes in his Reply and Memorandum, the case on which he relied was reversed by the Eleventh Circuit after the Petition was filed. See Shelton v. Sec'y, Dep't of Corr., 691 F.3d 1348 (11th Cir. 2012). Thus, there is no merit to this claim.

### D. Ground Four

Petitioner argues that the trial court erred "by allowing the jury to be unduly prejudiced by inadmissible evidence of Petitioner being required to wear a security device which was tantamount to shackling." Petition at 10.

At trial, the following discussion occurred outside the presence of the jury.

> [PROSECUTOR]: If you don't mind, a quick matter, since we're waiting. I have a concern about one issue I'm not quite sure how to address. I need to seek some of the Court's guidance on this. I know that because of the nature of this courtroom and because of the charges, that Mr. West is wearing a security leg brace. And I have noticed during the course of the trial that it has become very apparent and obvious that it bothers him somewhat as he moves from his chair to the podium to ask questions, and that it is actually even audible that it is on him. He appears to, at least from somebody who doesn't know, it has the appearance that he has a handicap of some sort or has some problem with his leg.
>
> As the Court is aware now that the allegations in this case are that his - - the reason he became involved in this is, it [is] our allegation, that he was a bodyguard for both Joseph Sweeting and Anthony Sweeting and came up here to participate in the activity in that capacity. And I know that the jury has noticed that leg brace, and it is somewhat - - I don't think it is somewhat. I think it probably significantly undermines the state's theory of the case and almost becomes testimonial to a certain degree.

And I have been trying to think of ways to handle that issue. If Mr. West testifies ultimately, I think I can probably ask him if he has any impairments to his leg, and it can be placed before the jury that way. But, of course, I have a duty to put all of the evidence and the complete case before we get there. And I don't know whether he is going to testify or not. Obviously, he doesn't have to testify, and I have to have my case completed when I rest.

So I wanted to mention it to the Court. I have a couple of possible suggestions as to how to handle it. I don't know if the Court - - I'm sure the Court is more experienced with this than I am. But mostly the defendants sit over there at the table and the jury doesn't see it. You know, if they testify, they are put in the witness stand before the jury comes out, and the Court generally handles it that way. So I thought I would throw that out and we can address it before I close.

THE COURT: Wayne, what is you-all's rule about that?

THE BAILIFF: They are supposed to wear it. That is all.

THE COURT: It is mandatory whenever they are not - -

THE BAILIFF: Whenever they are dressed out.

[PROSECUTOR]: I'm not faulting anybody for it, Judge. I understand the need for it. I'm not criticizing or faulting anybody for it.

[THE COURT]: I was going to say, one solution would be that we could take it off, but if their rule is that it is mandatory, I'm not going to order them to violate their rules. I won't get fired for it; they will.

[PROSECUTOR]: They do need to get a can of oil for that thing though because it is squeaking awful.

. . . .

[PROSECUTOR]: I bring it to the Court's attention because I think it is a significant problem and could be problematic for the jury. And like I said, it can be solved if he takes the stand and I'm allowed to inquire into if he has any handicaps or

11

impairments. We don't know whether he is going to do that. We can't make him tell us whether he is going to do that or not so I'm at a hard spot.

THE COURT: Well, I have gotten a lot of complaints from defense counsel since we have been using that. The jurors do notice it, and they figure out what it is, and it is tantamount to having them shackled in view of the jury, which violates the law.

    . . . .

THE COURT: As a general rule, if the defendant is doing nothing more active than just being - - sitting in the counsel table throughout the trial and we bring him in and out when the jury is not here, then it is very unobtrusive and they don't know. In a case where the defendant is, for whatever reason, moving around, I have had numerous complaints from defense counsel that that device is not candescent, and at least it is visible through his clothing, and it changes his gait and makes it obvious that he is wearing some kind of restraining device. And their theory is the jury figures it out and knows what it is, so it is the same as having him shackled.

[PROSECUTOR]: But that is a defense theory trying to make a record for something else. My concern is that the jury - - an equally, you know, viable theory is that he has a leg brace because he has a handicap or impairment, which completely undermines the state's theory of the case that he is a strong man or an enforcer, so it concerns me.

    And I know the Court is reluctant to comment upon it, but I thought perhaps there are a couple - -

THE COURT: I think if I told them what it was, it would be certain reversible error right there.

[PROSECUTOR]: I'm concerned about it too, but I'm wondering if the Court would entertain - - and maybe the Court needs to think about it - - obviously, going on with the case here - - some kind of instruction that any - - or if the Court will allow me to ask Detective Cook whether he is aware of Mr. West suffering any handicaps, impairments, or anything during the course of the pendency of this investigation up to and

> including his arrest, whether there is anything physically wrong with him.
>
> THE COURT: I don't think you can ask the detective that.
>
> . . . .
>
> [PROSECUTOR]: Well, I think I can ask the detective in any of his contact did he wear a leg brace?
>
> THE COURT: Oh, you can ask him that. Anything that he has physically seen or not seen, sure. But you can't say, Is he handicapped or not? That is clearly a medical - -
>
> [PROSECUTOR]: Well, then I would move the Court to instruct the bailiffs to remove the restraining device.
>
> THE COURT: I'm not going to do that. If they violate those standing rules on handling the prisoners, they - - and we've had it happen right in this courtroom - - they get disciplinary action for it.
>
> [PROSECUTOR]: May I directly ask the bailiffs if they would be willing to consider it?
>
> THE COURT: Sure.
>
> [PROSECUTOR]: Would you consider removing it for the purposes that I've enumerated?
>
> THE BAILIFF: No.

Ex. G at 327-33. Petitioner, who represented himself at trial, did not object or comment on this issue.

With the benefit of counsel, Petitioner raised this claim on direct appeal. Ex. J. The state filed an answer brief arguing that Petitioner had not properly preserved the issue because he did not raise it at trial or otherwise object to wearing the security leg brace. Ex. K. The state further argued that because Petitioner was representing himself, the need to

13

maintain courtroom security outweighed his right to stand before the jury without restraint. Id. The First DCA per curiam affirmed Petitioner's judgment of conviction without issuing a written opinion. Ex. M.

The First DCA could have agreed with the state's argument and affirmed because Petitioner failed to properly preserve the issue for appeal. Indeed, "to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved." Tillman v. State, 471 So. 2d 32, 35 (Fla. 1985) (citations omitted); see Brown v. State, 856 So. 2d 1116, 1117 (Fla. 4th DCA 2003) ("Prior to trial, Brown requested the shackles be taken off; however, after the trial court stated it[s] reasons for refusing to grant that request, Brown neither requested a hearing to make an inquiry into the necessity for shackles nor did he contest the trial court's stated reasons. Since the trial court was never given the opportunity to rule upon this specific argument and we find no fundamental error, appellate review is precluded"). While the state objected to the use of the leg restraint during Petitioner's trial, Petitioner remained silent. Because Petitioner failed to object to the use of the leg brace at trial, he did not properly preserve the issue for appeal. Assuming the First DCA rejected the claim based on Petitioner's failure to preserve it, the claim is likewise barred on federal habeas review. See Finney v. McDonough, No. 8:02-cv-2217-T-30TBM, 2006 WL 2024456, at *14-15 (M.D. Fla. 2006) (unpublished) (a federal habeas petitioner argued that the state trial court erred in denying his request to have the shackles removed during the penalty phase of his trial; the Florida Supreme Court rejected the claim, finding that he failed to properly preserve the

issue for appeal; and the federal habeas court found the claim to be procedurally barred). Petitioner has shown neither cause to excuse the default nor resulting prejudice. He also has not shown that a fundamental miscarriage of justice will result if this Court declines to hear this claim on the merits. Therefore, Petitioner's claim is barred, and he is not entitled to federal habeas relief.

Insofar as the First DCA decided the claim on the merits, this Court is required to apply AEDPA deference to that decision. "The law has long forbidden routine use of <u>visible</u> shackles during the guilt phase; it permits a State to shackle a criminal defendant only in the presence of a special need." <u>Deck v. Missouri</u>, 544 U.S. 622, 626 (2005) (emphasis added). This is so because "[v]isible shackling undermines the presumption of innocence and the related fairness of the factfinding process." <u>Id.</u> at 630. Additionally, it is important to maintain the dignity and decorum of the courtroom and to allow for ready communication between the accused and his counsel.[6] <u>Id.</u> at 631. But, it is also recognized that criminal trials are not conducted in a "crystalline palace," and often, security measures must be taken to ensure the safety and security of the judge, the lawyers, the jury, and the courtroom personnel. <u>Allen v. Montgomery</u>, 728 F.2d 1409, 1413 (11th Cir. 1984).

This issue came up at trial in an unusual way: instead of the defendant objecting to the jury seeing the leg brace, it was the prosecutor. The prosecutor's concern was that the jury would infer Petitioner had "a handicap of some sort or has some problem with his leg," which was inconsistent with the state's theory of the case. Thus, the record only contains the observations of the prosecutor and the trial judge's commentary on what had occurred in

---

[6] This concern is not present in this case because Petitioner represented himself.

prior cases in which defendants wore the same leg brace. The prosecutor asked two witnesses if they had ever seen Petitioner wear a leg brace or have difficulty walking; both witnesses responded negatively. Ex. G at 355, 469. Perhaps in an attempt to further contradict the state's theory, Petitioner asked a witness whether the witness knew that Petitioner had once been "labeled 85 percent paralyzed on [his] left side" or whether he had ever seen Petitioner walk with a limp. Ex. G at 471-72.

If Petitioner had objected at trial, the trial judge would have been required to make a record and rule on the issue.[7] But Petitioner did not object. While the issue could have been handled better, given the record, the Court cannot find that the First DCA's decision was contrary to clearly established federal law, involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented. Thus, Petitioner is not entitled to federal habeas relief.

It is **ORDERED**:

1. The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The Clerk shall enter judgment denying the Petition and dismissing this case with prejudice and thereafter close the file.

3. If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability.[8] Because the Court has determined that a certificate of appealability is not

---

[7] If the trial judge was required to consider an objection by the Petitioner at trial, he could not simply defer the decision to the bailiff, as he did here.

[8] This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make

warranted, the Clerk of Court shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** in Jacksonville, Florida, this 11th day of January, 2018.

TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 1/10
c:
Marshaun West, #430962
Counsel of Record

---

this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), "or that the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quoting Slack, 529 U.S. at 484). "Where a district court has rejected the constitutional claims on the merits, . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484. However, "[w]hen the district court denies a habeas petition on procedural grounds . . . a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. After consideration of the record as a whole, the Court denies a certificate of appealability.

17